# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Adam Donahue,<br><div align="center">Plaintiff</div><br><div align="center">v.</div><br>Navient Solutions, Inc.,<br><div align="right">Defendant</div> | Docket No. 3:16-cv-00244-MEM<br><br>(JUDGE MALACHY E. MANNION)<br><br><br>ELECTRONICALLY FILED |

## BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

s/ Brett Freeman

Brett Freeman
Bar Number PA 308834
SABATINI LAW FIRM, LLC
Attorney for Plaintiff
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email: bfecf@sabatinilawfirm.com

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................. II

TABLE OF AUTHORITIES ........................................................... III

INTRODUCTION AND PROCEDURAL HISTORY ................................ 1

STATEMENT OF FACTS ................................................................ 1

QUESTIONS PRESENTED ............................................................... 3

LEGAL STANDARD ...................................................................... 5

ARGUMENT ................................................................................ 7

   A.     Defendant's conduct violated the Act .......................... 9

      1.    *Elements that are not in dispute* .......................... 11

      2.    *Defendant will not be able to successfully establish a prior express consent defense.* .............................. 11

      3.    *The 2015 Amendment to the TCPA should have no bearing on this case.* ...................................................... 17

         a.   The "federal debt" defense has not yet been implemented. 18

         b.   The TCPA Amendment should not be applied retroactively. .............................................. 26

   B.     Treble damages are appropriate for Defendant's willful and knowing violations of the TCPA. ............ 38

CONCLUSION .......................................................................... 45

## Cases

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ................................................................5, 7

*Bridgeview Health Care Ctr. Ltd. v. Clark,*
2013 WL 1154206 (N.D. Ill. Mar. 19, 2013), *aff'd,* 816 F.3d 935
(7th Cir. 2016) .................................................................39

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ....................................................................6

*Clark v. United States,*
93 Fed. Cl. 756 (2010), *aff'd,* 656 F.3d 1317 (Fed. Cir. 2011) .......19

*Davis v. Diversified Consultants, Inc.,*
36 F. Supp. 3d 217 (D. Mass. 2014) ...............................................39

*Doe v. Abington Friends Sch.,*
480 F.3d 252 (3d Cir. 2007) ............................................................5

*Doe v. County of Centre, PA,*
242 F.3d 437 (3d Cir. 2001) ............................................................6

*Foehl v. United States,*
238 F.3d 474 (3d Cir. 2001) ............................................................5

*Gager v. Dell Fin. Servs., LLC,*
727 F.3d 265 (3d Cir. 2013) .................................................. 7, 12, 17

*Guzman v. Attorney Gen. U.S.,*
770 F.3d 1077 (3d Cir. 2014) ................................................. 33, 34

*Harris v. World Fin. Network Nat. Bank*,
    867 F. Supp. 2d 888 (E.D. Mich. 2012) .............................. 42, 43, 44

*Hartman v. Greenwich Walk Homeowners' Ass'n, Inc.*,
    71 F. App'x 135, at fn. 2 (3d Cir. 2003) .......................................... 6

*Hughes Aircraft Co. v. U.S. ex rel. Schumer*,
    520 U.S. 939 (1997) ................................................................. 29, 32

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
    337 F.3d 314 (3d Cir. 2003) ............................................................ 42

*Landgraf v. USI Film Prod.*,
    511 U.S. 244 (1994) ........................................................... passim

*Landsdale Family Restaurants, Inc. v. Weis Food Service*,
    977 F.2d 826 (3d Cir. 1992) ............................................................ 42

*Lary v. Trinity Physician Fin. & Ins. Servs.*,
    780 F.3d 1101 (11th Cir. 2015) ...................................................... 43

*Lieberman v. Cambridge Partners, L.L.C.*,
    432 F.3d 482 (3d Cir. 2005), *as amended* (Feb. 8, 2006) .............. 34

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986) ....................................................................... 6

*Ponnapula v. Ashcroft*,
    373 F.3d 480 (3d Cir. 2004) ...................................................... 31, 32

*Roylance v. ALG Real Estate Servs., Inc.,*
2015 WL 1522244 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as modified,* 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015)................................................................40

*Sengenberger v. Credit Control Services, Inc.,*
2010 WL 1791270 (N.D. Ill. 2010) ................................................39

*Shyda v. Dir., Bureau of Alcohol, Tobacco & Firearms, U. S. Dept. of Treasury*, 448 F. Supp. 409 (M.D. Pa. 1977)...................................41

*Smith v. Wade,*
461 U.S. 30 (1983) ........................................................................40

## Statutes

47 U.S.C. § 153(39) ...............................................................................1

47 U.S.C. § 227 ......................................................................... passim

47 U.S.C. § 312(f).................................................................................39

## Other Authorities

Merriam Webster's Definition for Implement, *available at*
http://www.merriam-webster.com/dictionary/implement .............18

## Regulations

47 CFR § 64.1200 .................................................................................7

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 07-232 (2008)...................10

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, FCC 15-72 (July 10, 2015). 12, 17

*In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, FCC 16-99 (August 11, 2016) ................................................................................................ passim

## INTRODUCTION AND PROCEDURAL HISTORY

Plaintiff filed a state-court complaint alleging that Defendant violated the Telephone Consumer Protection Act, 47 U.S.C. § 227 ("the TCPA"), when it placed calls to his cellular telephone using an automatic telephone dialing system ("ATDS"). Defendant removed the matter to this Court, and the parties conducted discovery. Defendant has filed a Motion for Summary Judgment, and Plaintiff now files this Cross-Motion for Summary Judgment.

## STATEMENT OF FACTS

The parties agree on nearly all of the relevant facts. Both parties are "persons" as defined by 47 U.S.C. § 153(39). (Plaintiff's Statement of Undisputed Material Facts (hereinafter "SUMF") ¶ 3-4.) Defendant is the servicer of a federal student loan allegedly owed by Plaintiff. (SUMF ¶ 4.) Plaintiff's cellular telephone number is (570) 983-9995. (SUMF ¶ 5.) At all relevant times, this number has been assigned to a cellular telephone network, and Defendant has known that this number was associated with a cell phone. (SUMF ¶ 6-7.)

On August 5, 2014, Defendant called Plaintiff. (SUMF ¶ 7.) During this phone call, Defendant placed Plaintiff's account in

forbearance. (SUMF ¶ 12.) During this phone call, Defendant also changed the address on Plaintiff's. Defendant did not require Plaintiff to provide any information to confirm his identity before changing the address or placing his account in forbearance. (Exs. D and J to Freeman Affidavit.)[1]

On May 6, 2015, Defendant again called Plaintiff. (SUMF ¶ 16.) During this phone call, Plaintiff asked Defendant to no longer call him. (SUMF ¶¶ 17-18.)[2] On May 7, 2015, Defendant called Plaintiff again. (SUMF ¶¶ 22-23.) During this phone call, Plaintiff again asked Defendant to no longer call him. (SUMF ¶¶ 24-26.)[3] On May 19, 2015, Defendant called Plaintiff again. (SUMF ¶¶ 30; 32.) During this phone call, Plaintiff again asked Defendant to no longer call him. (SUMF ¶¶ 31; 33.)[4] Despite having received three requests to no longer place calls

---

[1] A true and correct copy of a recording for this phone call is attached to the Freeman affidavit as Exhibit D.

[2] A true and correct copy of a recording for this phone call is attached to the Freeman affidavit as Exhibit E.

[3] A true and correct copy of a recording for this phone call is attached to the Freeman affidavit as Exhibit F.

[4] A true and correct copy of a recording for this phone call is attached to the Freeman affidavit as Exhibit G.

to Plaintiff, Defendant took no action to try and stop further calls.

(SUMF ¶ 19; 26; 33.) Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal

Between May 7, 2015 and January 12, 2016, Defendant placed 233 phone calls to Plaintiff's cellular telephone. (SUMF ¶ 37.)[5] All 233 of these phone calls were placed using an automatic telephone dialing system, as that term is defined in the TCPA. (SUMF ¶ 40.) Plaintiff was located within the United States when each of the 233 phone calls was placed. (SUMF ¶ 41.) None of these phone calls were placed for an emergency purpose. (SUMF ¶ 42.)

QUESTIONS PRESENTED

A.    Did Defendant violate the TCPA?

**Suggested Answer:** Yes. None of the relevant facts are in dispute—Defendant admits that it called Plaintiff 233 times using an automatic telephone dialing system. Defendant has also produced three

_____

[5] 158 of these phone calls were placed between May 7, 2015 and November 2, 2015. (SUMF ¶ 38.) 75 of these phone calls were placed between November 3, 2015 and January 12, 2016. (SUMF ¶ 39.)

recordings in which Plaintiff requested that no further calls be made. Thus, Defendant has no defense to liability. Its conduct violated the TCPA.

B.    Has the 2015 Amendment to the TCPA created an exemption that applies to Defendant's conduct?

**Suggested Answer:** No. The TCPA Amendment is not yet effective, as the FCC's required implementing regulations have not yet become effective—and both the FCC and the text of the statute make it clear that these regulations are necessary to balance the privacy interests of consumers with the government's need to collect debts. Alternatively, even if the TCPA Amendment is considered to be effective immediately (rather than upon the issuance of the FCC's regulations), Third Circuit caselaw should preclude any application prior to the effective date of the amendment. Instead, it should only be applied to calls that were placed after the effective date of the statute.

C.    Should the Court award treble damages?

**Suggested Answer:** Yes. There is a split of authority as to what constitutes a willful violation under the TCPA that can allow for treble damages. Some courts hold that a caller needs to engage in conduct

*with the specific knowledge that its actions may violate the TCPA*, while others hold that a caller may willfully violate the TCPA simply by *intending to perform the conduct*—even though there is no specific intent to violate the statute. However, this split does not matter here, as Defendant's conduct satisfies the "willful" standard under any reading. Defendant was told three times to stop calling Plaintiff, and it admittedly ignored those requests. This case is a classic example of where treble damages are necessary to properly enforce the TCPA's private right of action.

## LEGAL STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Foehl v. United States,* 238 F.3d 474, 477 (3d Cir. 2001). An issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); see also *Doe v. Abington Friends Sch.,* 480 F.3d 252, 256 (3d Cir. 2007) ("A genuine

issue is present when a reasonable trier of fact, viewing all of the record evidence, could rationally find in favor of the non-moving party in light of his burden of proof.") In deciding a summary judgment motion, a court must view the facts in the light most favorable to the non-moving party, and it must draw all reasonable inferences and resolve all doubts in that party's favor. *Doe v. County of Centre, PA,* 242 F.3d 437, 446 (3d Cir. 2001).

"[W]here the non-moving party bears the burden of proof on a particular issue, the party seeking summary judgment may discharge its initial burden by 'pointing out to the district court that there is an absence of evidence to support the non-moving party's case.'" *Hartman v. Greenwich Walk Homeowners' Ass'n, Inc.*, 71 F. App'x 135, at fn. 2 (3d Cir. 2003) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the moving party has satisfied this burden, the burden shifts to the non-moving party who must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986). If the non-moving party's evidence in opposition to a properly supported motion for summary judgment is "merely colorable" or "not significantly

probative," the Court may grant summary judgment. *Anderson,* 477 U.S. at 249-50.

<center>A<small>RGUMENT</small></center>

In passing the TCPA, Congress acted to "protect the privacy interests of residential telephone subscribers by placing restrictions on unsolicited, automated telephone calls to the home and to facilitate interstate commerce by restricting certain uses of facsimile machines and automatic dialers." S.Rep. No. 102-178, at 1 (1991) as reprinted in 1991 U.S.C.C.A.N. 1968. The TCPA is a "remedial statute that was passed to protect consumers from unwanted telephone calls." *Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013). "Because the TCPA is a remedial statute, it should be construed to benefit consumers." *Id.* Additionally, pursuant to the statute, the Federal Communications Commission ("FCC") has prescribed various regulations implementing the TCPA, which are codified at 47 CFR § 64.1200.

The TCPA provides, *inter alia*:

(1) Prohibitions[:] It shall be unlawful for any person within the United States, or any person outside the United States if the recipient is within the United States—

<center>7</center>

> (A)    to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice—
> ***
> (iii)  to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, *unless such call is made solely to collect a debt owed to or guaranteed by the United States.*

47 U.S.C. § 227(b)(1)(A)(iii)(italics added).[6]

The TCPA provides a private right of action for violations of subsection (b), or the regulations prescribed under that subsection, to recover either the actual monetary loss from such violations or statutory damages of $500 for each violation, whichever is greater. 47 U.S.C. § 227(b)(3). A court may treble the amount of damages awarded if the court finds that the defendant's violations were committed "willfully or knowingly." *Id.* In the present case, Plaintiff's TCPA claim

---

[6] The italicized portion of this statute was part of the 2015 amendment to the TCPA. This amendment was signed into law on November 2, 2015. However, as discussed *infra*, the italicized portion has no impact on this case, as the amendment has not yet been implemented by the FCC.

seeks statutory damages only, as the minimum statutory damages exceed the actual damages he suffered.

A. Defendant's conduct violated the Act

To establish a violation of the TCPA, Plaintiff needs to establish the following elements: (1) Plaintiff is a person; (2) Defendant is a person; (3) Defendant placed a call to the Plaintiff; (4) Plaintiff or the caller was in the United States or the caller was in the United States; (5) the call was made using an automatic telephone dialing system, a prerecorded voice, or an artificial voice; and (6) the call was placed to a number assigned to a cellular telephone service. As discussed below, none of these elements are in dispute.

There are only two defenses for calls that otherwise violate the Act: (a) the call was placed for an emergency purpose; or (b) the call was placed with the recipient's prior express consent. The FCC has made it clear that a defendant has the burden of establishing that it had prior express consent to place the telephone calls.[7] *In the Matter of Rules and*

---

[7] It is not clear which party has the burden of establishing whether the call was made for an emergency purpose. However, Defendant has admitted that the calls were not made for an emergency purpose. (SUMF ¶ 42.)

*Regulations Implementing the Telephone Consumer Protection Act of 1991*, FCC 07-232 ¶ 10 (2008)("Should a question arise as to whether express consent was provided, the burden will be on the creditor to show it obtained the necessary prior express consent."). Here, it is expected that Defendant will be asserting a prior express consent defense.

Additionally, the 2015 amendment to the TCPA exempts from the prior express consent requirement any calls "made solely to collect a debt owed to or guaranteed by the United States[.]" 47 U.S.C. § 227(b)(1)(A)(iii). It is unclear which party would have the burden of proof with respect to this issue. However, Plaintiff does not dispute that Defendant's calls were placed to collect a debt owed to or guaranteed by the United States. But, as discussed *infra*, Plaintiff does not believe that this new provision has any impact on this case.

Plaintiff will first discuss the elements that are not in dispute. Then, Plaintiff will discuss why Defendant's prior express consent defense fails, and why the amendment to the TCPA does not exempt Defendant's calls.

### 1. Elements that are not in dispute

There can be no legitimate dispute over whether: (1) Plaintiff is a person (SUMF ¶ 3), (2) Defendant is a person (SUMF ¶ 4), (3) Defendant placed 233 calls to Plaintiff's Number (SUMF ¶ 37), (4) all of the 233 phone calls were placed using an automatic telephone dialing system (SUMF ¶ 40), (5) Plaintiff was in the United States when the calls were place to his cell phone (SUMF ¶ 41), (6) the calls were placed to a number assigned to a cellular telephone service (SUMF ¶ 6), and (7) the calls were not placed for emergency purposes (SUMF ¶ 42).

Thus, unless Defendant can successfully advance a prior express consent defense, or it is exempt from liability based on the 2015 amendment, Defendant violated the TCPA.

### 2. Defendant will not be able to successfully establish a prior express consent defense.

The TCPA permits a call to be placed to a cellular telephone using any type of equipment if the caller has the prior express consent of the called party. Here, Plaintiff does not dispute that he originally provided Defendant with consent to call his cellular telephone. However, he clearly revoked that consent on May 6, 2015, May 7, 2015, and May 19, 2015 when he asked Defendant to stop calling him.

It is well established that consent can be revoked under the TCPA. *See, e.g., Gager v. Dell Fin. Servs., LLC*, 727 F.3d 265, 271 (3d Cir. 2013); *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of* 1991, FCC 15-72 (July 10, 2015)(hereinafter "2015 FCC Order")(attached hereto). And, pursuant to the FCC, consumers may revoke consent in any manner that clearly expresses a desire not to receive further [calls or] messages, and that callers may not infringe on that ability by designating an exclusive means to revoke." 2015 FCC Order at ¶ 63. The FCC further held that "[c]onsumers generally may revoke, for example, by way of a consumer-initiated call, **directly in response to a call initiated or made by a caller**, or at an in-store bill payment location, among other possibilities." 2015 FCC Order at ¶ 64 (emphasis added). Thus, the FCC has specifically found that answering a call and asking that no further calls be placed is a valid method for a consumer to revoke consent.

Here, Plaintiff did just that. On three separate occasions Plaintiff answered a telephone call from Defendant and asked that no further calls be placed. Defendant does not deny that these conversations took place—in fact Defendant produced recordings of each call. Instead,

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal
Redacted Pending Motion to Seal
Redacted Pending Motion to Seal
Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal



Redacted Pending Motion to Seal
Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

14

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal Redacted Pending Motion to Seal Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal
Redacted Pending Motion to Seal

[8] Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal.[9]

Ultimately, there can be no doubt that Plaintiff revoked consent for Defendant to call him. On three separate occasions Plaintiff informed Defendant that he did not want any further phone calls to be placed to his cell phone, and Defendant ignored every one of these

---

[9] Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal Redacted Pending Motion to Seal
Redacted Pending Motion to Seal

requests. Although Defendant bears the burden of proving a prior express consent defense, it is clear that there will be no evidence that can support such a defense. The last time Plaintiff provided Defendant with prior express consent was in 2014. (SUMF ¶ 43.) And, he revoked that consent on May 6, 2015, May 7, 2015, and May 19, 2015. Thus, pursuant to the Third Circuit's decision in *Gager*, and the 2015 FCC Order, all calls after May 6, 2015 were placed without Plaintiff's prior express consent.

> 3. *The 2015 Amendment to the TCPA should have no bearing on this case.*

Defendant's second defense to liability will be that the calls are exempted from the TCPA's restrictions because each call was "made solely to collect a debt owed to or guaranteed by the United States." This defense, which was recently added to the statute in 2015 ("the TCPA Amendment"), should also fail. Plaintiff will first explain why this defense fails as a matter of law for *all* of the calls. And, in the alternative, Plaintiff will explain why this defense certainly does not have any impact on the 158 calls placed *before* the TCPA Amendment was signed by the President.

a. <u>The "federal debt" defense has not yet been implemented.</u>

As part of the TCPA Amendment, Congress charged the FCC with issuing regulations regarding the amendment. Specifically, Congress stated that "[n]ot later than 9 months after the date of enactment of this Act, the Federal Communications Commission, in consultation with the Department of the Treasury, shall prescribe regulations to **implement** the amendments made by this section." Bipartisan Budget Act of 2015, Public Law 114-74 ("Budget Bill") at § 301(b)(emphasis added)(attached to Freeman Affidavit as Exhibit H). The key word in that sentence is implement. The first definition of the verb "implement" in Merriam-Webster's dictionary is:

**Full Definition of IMPLEMENT**

transitive verb

1 : CARRY OUT, ACCOMPLISH; *especially* : to give practical effect to and ensure actual fulfillment by concrete measures

Merriam Webster's Definition for Implement, *available at*

http://www.merriam-webster.com/dictionary/implement, (last visited October 27, 2016).

Thus, Congress essentially stated that "[n]ot later than 9 months after the date of enactment of this Act, the Federal Communications

Commission . . . shall prescribe regulations to [*give practical effect to*] the amendments made by this section." Budget Bill at § 301(b)(emphasis and bracketed text added). And, the Budget Bill also stated that the FCC had the power to limit the number or duration of phone calls placed utilizing this section. Budget Bill at § 301(a)(2)(C)(adding to the statute that the FCC may "restrict or limit the number and duration of calls made to a telephone number assigned to a cellular telephone service to collect a debt owed to or guaranteed by the United States."). Thus, it is clear that Congress did not intend that the TCPA Amendment would be utilized until *after* the FCC had determined how the amendment should be applied, and whether there should be a limit on the number of calls that were permissible. *See generally Clark v. United States*, 93 Fed. Cl. 756, 771 (2010), *aff'd*, 656 F.3d 1317 (Fed. Cir. 2011)(holding that a statute was not self-implementing and required regulations to become effective).

Even stronger support for Plaintiff's argument can be found in the regulations that *were* promulgated by the FCC. On August 11, 2016, the FCC released its Report and Order implementing the TCPA Amendment. *See In the Matter of Rules and Regulations Implementing*

*the Telephone Consumer Protection Act of* 1991, FCC 16-99 (August 11, 2016)(hereinafter "Implementing Order")(attached to Freeman Affidavit as Exhibit I). The FCC chose to severely limit the scope of the amendment. For example, the FCC limited the number of calls that could be placed without prior express consent to only *three calls per thirty days*. Furthermore, the FCC determined that calls must still stop upon request. And, the FCC also required that callers establish mechanisms for easily allowing consumers to request that calls stop, and for ensuring that the consumer's request was transmitted to any subsequent entities servicing the account.

Thus, the FCC chose to not provide entities collecting federal debts with a free pass to robodial cell phones. Instead, the FCC carefully implemented the amendment's effects to balance the need for informational phone calls with consumers' privacy interests in restricting who can call their cell phones. A chart describing all of the holdings made in the FCC's ruling, along with how the TCPA Amendment would function without the implementing regulations, is produced on the following pages:

| Restriction | How calls will be treated once the implementing regulations are effective | How calls would be treated if implementing regulations were not required |
| --- | --- | --- |
| Accounts that can be called: | Only delinquent accounts or accounts that are at imminent risk of delinquency.[1] | All accounts irrespective of delinquency |
| What debts are covered: | Only debts *currently* owed to or guaranteed by the United States.[2] | Possibly also debts insured by the United States and debts that were *previously* owed to the United States. |
| Who can be called: | Only the debtor or another person legally responsible for paying the debt.[3] | No restriction. |
| Numbers that may be called: | (1) Wireless numbers provided by the debtor at the time the debt was incurred; (2) numbers provided by the debtor to the caller after the loan was initiated; and (3) numbers obtained from an independent source if the number actually belongs to the debtor.[4] | No restriction. |
| Who may make the calls? | Only the owner of the debt or the owner's contractor.[5] | Anyone seeking to collect a covered debt. |

[1] Implementing Order at ¶¶ 14; 42.
[2] Implementing Order at ¶ 20.
[3] Implementing Order at ¶¶ 21; 44.
[4] Implementing Order at ¶ 23.
[5] Implementing Order at ¶ 27.

| What constitutes a call? | Any <u>initiated</u> call, even if not answered or completed.[6] | No restriction. |
|---|---|---|
| Content of the call: | Cannot include any form of telemarketing.[7] | Could include hybrid calls which are both debt collection and marketing calls. |
| Number of calls: | Three within a thirty-day period.[8] | No restriction. |
| *Can a consumer stop calls?* | *Consumer has the right to stop these calls at any point the consumer wishes, and the caller must convey this request to a subsequent caller.* [9] | *No right to stop the phone calls.* |
| Must a caller provide notice of the right to stop calls? | Yes, once in writing and then again during every phone call.[10] | Not applicable, as no such right exists. |
| Length of phone calls: | Maximum call length may not exceed 60 seconds and maximum text message is limited to 160 characters.[11] | No restriction. |
| Time restrictions: | Calls can only be placed between 8:00 a.m. to 9:00 p.m.[12] | None, although other laws may prescribe a limitation. |

---

[6] Implementing Order at ¶ 28.

[7] Implementing Order at ¶¶ 29; 43.

[8] Implementing Order at ¶¶ 32-36.

[9] Implementing Order at ¶¶ 38-39.

[10] Implementing Order at ¶¶ 40-41.

[11] Implementing Order at ¶¶ 46-47.

[12] Implementing Order at ¶ 48.

As the above-chart makes evident, the rules promulgated by the FCC are meant to empower consumers and ensure that the TCPA Amendment only applies in limited circumstances.

Importantly, the FCC thoroughly discussed when the regulations would go into effect (Implementing Order at ¶ 59-60.) As of the filing of this brief, the regulations are not in place, and possibly will not be for many more months. Notably, the FCC stated that portions of the order *could* go into effect immediately. For example, "[t]he rules that could become effective immediately permit a caller to make calls—they specify how many calls may be made, who may make the calls, when the calls can be made, and to which numbers the calls may be made, among other things." Implementing Order at ¶ 60. The FCC noted that those "rules give effect to one of the reasonable interpretations we have identified for Congress' passage of the Budget amendments: to make it easier for owners of debts owed to or guaranteed by the United States and their contractors to make calls to collect debts." *Id.*

However, the FCC held that a "second reasonable interpretation— to make it easier for consumers to obtain useful information about debt repayment—carries with it a consumer's prerogative to determine that

the debtor does not want the information conveyed in the calls and to ask that the calls stop." *Id.* And, rules giving effect to this interpretation could *not* immediately go into effect because of the Paperwork Reduction Act. *Id.* at ¶¶ 59-60. As a result, the FCC therefore concluded that:

> [T]he regulatory scheme we implement today **must** include both the ability for callers to make calls and the right of debtors to ask that calls stop—and that **both portions of the regulatory scheme become effective simultaneously. To do otherwise would be to allow callers to make calls but to leave debtors with no consumer protections until OMB approval is complete.** We determine that both portions of the rules must become effective for the regulatory scheme to be effective.

*Id.* at ¶ 60 (emphasis added). And, the only item in the above chart which could *not* be implemented immediately is the item set forth in italics. *See* Implementing Order at ¶ 59 ("two portions of our rules implicate the Paperwork Reduction Act (PRA). These portions involve the rules for the recording of a debtor's request to stop receiving . . . calls to collect a debt owed to or guaranteed by the United States, and rules for the conveyance of that stop-call request from one servicer or collector to another.").

Thus, it is clear from this portion of the Implementing Order that the FCC does not believe that the TCPA Amendment is already in place. The FCC is clearly concerned with protecting consumers by empowering them with the right to restrict unwanted phone calls and permitting only a minimal number of calls to be placed without prior express consent. But, even though the Commission could have admittedly limited the number of calls that could be placed by making the remaining rules effective immediately, the FCC chose to delay the implementation date until the *entire* statutory scheme could be effective. And, it did so because the regulatory scheme "must include both the ability for callers to make calls and the right of debtors to ask that calls stop . . . ." *Id.* Instead, to implement only one portion would harm consumers because it would "allow callers to make calls but to leave debtors with no consumer protections until OMB approval is complete." *Id.* Thus, if the FCC is observing that callers are not yet "allow[ed] to make calls," then that observation must mean that the statute is not yet effective.

But, under Defendant's proffered reading of the statute, there *already is* an unfettered right to place telephone calls. If Defendant's

reading is correct, then the FCC's goal of protecting consumers could have been furthered by implementing most of its order now, because at least there would be *some* restrictions on the callers—such as the limit of no more than three calls within a thirty-day period.

Thus, by delaying the effectiveness of the rule, while stating that its concern was protecting consumers, the FCC has clearly indicated that the TCPA Amendment is not yet effective. As a result, Defendant should find no solace in the 2015 Amendment, and the Court should hold that the 233 phone calls Defendant placed to Plaintiff's cell phone violate the TCPA.

    b.  <u>The TCPA Amendment should not be applied retroactively.</u>

Alternatively, if the Court finds that the TCPA Amendment became effective upon the passage of the statute—rather than upon the effectiveness of the implementing regulations—then it must address Defendant's argument that the TCPA Amendment should also be applied retroactively.[1] In support of this argument, Defendant relies on

---

[1] If the Court determines that implementing regulations are required before the TCPA Amendment ever becomes effective, it need not consider this argument.

the unreported decision in *Silver v. Pennsylvania Higher Educ. Assistance Agency*, 2016 WL 1258629 (N.D. Cal. Mar. 31, 2016), where the court held that the TCPA Amendment should apply retroactively. *Silver* is a wrong. In reaching this decision, the court discussed *Landgraf v. USI Film Prod.*, 511 U.S. 244 (1994), the seminal case regarding retroactive application of a statute. But, *Silver's* analysis of *Landgraf* is entirely incorrect.

The most important take-away from *Landgraf* is that there is a strong presumption against the retroactive application of a statute. This "presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Id.* at 265. And, unless Congress makes clear its intent, the Court declines to retroactively apply a statute if it "burden[s] private rights . . . ." *Id.* at 269. Thus, when

> [a] statute contains no such express command [regarding whether it should apply retroactively], the court must determine whether the new statute . . . **would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.**

*Id.* at 280 (emphasis added). As a result, a statute should never be applied retroactively unless Congress has specifically mandated such a result, or there would not be any negative impact on a party's private rights. The Court describes such a negative impact as a "retroactive effect."

The *Silver* court did look at these factors, but it did not give proper weight to the strong presumption that a statute should not apply retroactively. Instead, the court simply analyzed how the TCPA Amendment would impact the caller. For example, the court held that the TCPA Amendment would not increase a party's liability—instead it would decrease the caller's liability for past conduct. *Silver*, 2016 WL 1258629 at *3. And, it held that instead of imposing new duties with respect to transactions already completed, the TCPA Amendment would eliminate the caller's duties to comply with the TCPA. *Id.* Finally, the court held that impairing the consumer's ability to bring a lawsuit was not a sufficient basis to bar retroactive application of a statute. *Id*. And, because the *Silver* court held that none of the factors from *Landgraf* were satisfied, the statute should apply retroactively.

However, the *Silver* court was in error when it treated the *Landgraf* test as an exclusive set of factors. As the Supreme Court has stated, a "conten[tion] that *only* statutes with one of these effects are subject to our presumption against retroactivity, . . . simply misreads our opinion in *Landgraf*." *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 947 (1997)(emphasis in original). Instead, the Court held that "[t]he language [in *Landgraf*] does not purport to define the outer limit of impermissible retroactivity. Rather, our opinion in *Landgraf* . . . merely described that any such effect constituted a *sufficient,* rather than a *necessary,* condition for invoking the presumption against retroactivity." *Id.* (emphasis in original). Thus, the Court again directed that it "appl[ies] this time-honored presumption [against retroactive application of a statute] unless Congress has clearly manifested its intent to the contrary." *Id.* at 946.

Since *Hughes Aircraft*, the Court has also instructed that "[t]he inquiry into whether a statute operates retroactively **demands a commonsense, functional judgment** about 'whether the new provision attaches new legal consequences to events completed before its enactment.' This judgment should be informed and guided by

'familiar considerations of fair notice, reasonable reliance, and settled expectations.'" *Martin v. Hadix*, 527 U.S. 343, 357–58 (1999)(internal citations omitted and emphasis added).

The *Silver* court simply did not follow the Supreme Court's direction that there is a strong presumption that a statute should not apply retroactively, nor did it provide a commonsense analysis regarding retroactive application.[2] Instead, the court only applied the factors discussed in *Landgraf*, and it treated these factors as an exhaustive list.[3] This decision essentially puts the cart before the horse—the court appeared to actually apply a presumption *in favor of* retroactive application unless one of the three *Landgraf* factors existed.[4]

---

[2] *Silver* was released prior to the Implementing Order. Thus, it is possible that the *Silver* court would have reached a different holding if it had known how severely the FCC's regulations would limit the scope of the TCPA Amendment.

[3] *Silver* is currently on appeal to the Ninth Circuit, although the briefing has not yet been completed.

[4] Defendant's brief likewise suggested an approach that would require retroactive application absent the existence of a *Landgraf*. Specifically, Defendant states that "[n]one of the elements from Landgraf prevent the retroactive application of the TCPA amendments in the Budget Act." (Doc. 13 p. 13.) Thus, Defendant is asking the Court to likewise apply a presumption in favor of retroactive application, which is completely at odds with Supreme Court and Third Circuit precedent.

This approach is completely at odds with the Supreme Court's guidance, and *Silver* should be given no persuasive value.[5]

The Third Circuit has also discussed the retroactive application of a statute. In *Ponnapula v. Ashcroft*, 373 F.3d 480 (3d Cir. 2004), the court was tasked with determining whether a provision of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") could apply retroactively.[6] *Ponnapula* is a very useful case, because it demonstrates the Third Circuit's disagreement with how other circuit courts apply *Landgraf*.[7]

*Ponnapula* noted that the Second Circuit's "lack of emphasis on the *presumption* against retroactivity is in considerable tension with the Supreme Court's consistent treatment of retroactivity analysis." *Id.* at

--------

[5] As discussed *infra*, Plaintiff believes that a clear application of the *Landsgraf* factors to the facts in the present matter demonstrate that there *is* a retroactive effect under Third Circuit precedent.

[6] Though *Ponnapula* did not construe the TCPA, "the retroactive application of an immigration law is analyzed no differently from the retroactive application of any other civil statute." *Ponnapula*, 373 F.3d at 501.

[7] *Silver* was decided within the Ninth Circuit, so the Third Circuit's criticism of the Ninth Circuit's approach to retroactive application of a statute is especially relevant.

490. Instead, the Third Circuit "h[e]ld that the presumption against retroactivity is *easily triggered,* though not automatic." *Id.* at 490–91. The *Ponnapula* court also found that decisions from other circuit courts,, including the Ninth Circuit, "ha[d] the effect of treating *Landgraf* as establishing a presumption *in favor* of retroactive application, but such a presumption would be wrong–the Supreme Court explicitly held in *Hughes Aircraft* that the [lower court] had erred by concluding that *Landgraf* evinced a 'strong presumption *in favor of* retroactivity.'" *Id.* at 491 (emphasis in original). Thus, *Ponnapula* confirms that the Third Circuit strictly adheres to the requirement that there be a strong presumption against retroactive application.

Defendant cites two cases from the Third Circuit regarding the retroactive application of a statute. However, neither case helps its cause. In *Guzman v. Attorney Gen. U.S.*, 770 F.3d 1077, 1082 (3d Cir. 2014), the court retroactively applied the IIRIRA—the same law that the *Ponnapula* court refused to apply retroactively. However, as is clear from this opinion, the holding was based on the specific facts in

*Guzman*.[8] Thus, *Guzman* is not relevant outside of its precise factual scenario.

---

[8] Specifically, in *Guzman* the court held that the consequence currently facing the petitioner—deportation—was the same consequence that he faced in 1995 when he was first convicted of possessing a controlled substance. The court noted the importance of these facts, and used them as a basis for distinguishing cases where other courts, including the Supreme Court, refused to retroactively apply the same. Specifically, the Court stated:

> *St. Cyr* and *Sinotes–Cruz* are different from the instant case in two important respects. First, while IIRIRA reclassified the crimes that the petitioners in *St. Cyr* and *Sinotes–Cruz* committed so as to produce harsher effects, no such reclassification took place here. Petitioner's 1995 offense rendered him deportable and ineligible for 212(c) relief, because he had not accrued seven years' continuous residence. **IIRIRA did not reclassify this offense or change it in any way**. A controlled substance offense rendered an alien deportable in 1995, **just as it would today,** and eligible for removal relief provided the alien has accrued seven years continuous residence, **just as it would today.**

*Guzman* 770 F.3d at 1085 (emphasis added). Thus, *Guzman* is readily distinguishable on its facts, as here Plaintiff *is* losing out on a right he previously had—the ability to stop automated calls to his cell phone related to the collection of a government debt. As a result, *Guzman* is not at all persuasive.

The second case Defendant cites is *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482 (3d Cir. 2005), *as amended* (Feb. 8, 2006). In *Lieberman*, retroactive application was discussed. And, the holding further supports Plaintiff's argument, as the court refused to retroactively apply the statute. It did so because retroactive application would have changed the rights of one party—namely, the new law *lengthened* the statute of limitations for a certain offense. The court refused to apply the longer statute of limitations, holding that it would be improper for a party to be sued on a cause of action that it had every reason to believe had already expired prior to the new law being passed. The exact same analysis is applicable here—it would be impermissible to require Plaintiff to receive unwanted robocalls to his cell phone when he had every right to stop the offensive conduct prior to the new law being passed. Thus, if anything *Lieberman* provides further support for Plaintiff's argument.

Ultimately, it is clear that the TCPA Amendment should <u>not</u> apply retroactively. First, an analysis of the *Landgraf* factors indicates that there is a retroactive effect. The first factor, whether retroactive application "would impair rights a party possessed when he acted"

weighs in Plaintiff's favor, as prior to the amendment he had a right to stop autodialed phone calls to his cell phone under the TCPA. There can be no doubt that Plaintiff exercised his right here—nor that Defendant ignored this request. And, to deter such conduct, Congress has provided a consumer with the ability to recover statutory damages for each illegal phone call. Applying the statute retroactively would deprive Plaintiff of the right he previously had—the ability to control who contacts him on his cell phone, and to act as a private attorney general to punish those who violate the law.

Plaintiff agrees that a retroactive application would not "increase a party's liability for past conduct." Instead, the retroactive application would potentially eliminate Defendant's liability. But, this result is not socially desirable or just. As the FCC has repeatedly noted, "TCPA complaints as a whole are the largest category of informal complaints the Commission receives." Implementing Order at ¶ 7. Simply put, consumers hate robocalls. Thus, the TCPA exists to deter situations such as this one where a consumer repeatedly requests that a caller not contact him anymore but his requests fall on deaf ears. Additionally, there can be no doubt that Defendant's conduct here will *not* be

permissible once the Implementing Order goes into effect—as discussed *supra*, calls are limited to three within a thirty-day period, and a consumer has the ability to stop the phone calls at any time. It would be completely inequitable to give Defendant a free pass here, when the exact same conduct will violated the TCPA before the TCPA Amendment was passed, and will again certainly violate it once the FCC's regulations are fully effective.

And, retroactively applying the TCPA Amendment would "impose new duties with respect to transactions already completed." Specifically, prior to the amendment, a consumer had the ability to stop robocalls. Thus, a consumer knew that when he provided his cell phone number to a creditor he was not agreeing to subject himself to an endless barrage of automated phone calls. Instead, he would have been able to stop the autodialed phone calls using any reasonable means. This right is important, as it encouraged the exchange of contact information that might otherwise be withheld if there were no ability to stop phone calls. But, if the TCPA Amendment were applied retroactively, it would impose a new duty on Plaintiff—namely that he would have to accept an unlimited number of robocalls to his cell phone or else get a new

phone number in order to stop receiving the calls. As Plaintiff never agreed to provide *irrevocable* consent to receive calls on his cell phone, applying the TCPA Amendment retroactively would impose a new duty on an already completed transaction. The above factors are a not a balancing test. Rather, pursuant to the Supreme Court and the Third Circuit, the bar against retroactive application applies if *any* of these three factors are present.

Additionally, according to the Supreme Court, a commonsense analysis should be applied. Here, a commonsense analysis of the situation also indicates that the statute should *not* apply retroactively. As discussed *supra*, the FCC has promulgated rules that would, *inter alia*: (1) limit the number of phone calls that could be placed, (2) restrict the phone numbers to which calls could be placed, and (3) empower consumers with the right to stop further phone calls. Defendant was not relying on the TCPA Amendment when it ignored Plaintiff's requests and placed 158 autodialed calls to his cell phone prior to November 2, 2015.[9] Instead, Defendant is attempting to simply escape liability here

---

[9] In fact, the TCPA Amendment was not included in any draft of the Budget Bill until less than one week before the legislation was enacted. *See* https://www.congress.gov/congressional-record/2015/10/28/house-

based on the fortuitous timing of its violations. It would defy commonsense to apply the TCPA Amendment retroactively, as Defendant's conduct would certainly violate the TCPA if it was committed after the effective date of the regulations.

As a result, the Court should hold that the TCPA Amendment is not retroactive, and therefore hold that Defendant violated the TCPA for all 158 phone calls placed prior to the passage of the TCPA Amendment.

B. <u>Treble damages are appropriate for Defendant's willful and knowing violations of the TCPA.</u>

In addition to statutory damages of $500 per call for every violation of the TCPA, the Court is also permitted to increase the damage award to an amount equal to no more than $1,500 per call. 47 U.S.C. § 227(b)(3). This case is clearly one where increased damages are appropriate.

Although "the TCPA does not define willful, the Communications Act of 19[34], of which the TCPA is a part, defines willful as 'the

---

section/article/H7273-2 at p. 16. Thus, it would be impossible for Defendant to claim that it was relying on this potential amendment when it placed the phone calls.

conscious or deliberate commission or omission of such act, irrespective of any intent to violate any provision[ ], rule or regulation.'" *Sengenberger v. Credit Control Services, Inc.*, 2010 WL 1791270 at *6 (N.D. Ill. 2010)(brackets in original)(discussing 47 U.S.C. § 312(f)). Numerous other courts have likewise applied this standard for TCPA violations. *See, e.g., Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 WL 1154206, at *7 (N.D. Ill. Mar. 19, 2013), *aff'd,* 816 F.3d 935 (7th Cir. 2016)("the Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."); *Davis v. Diversified Consultants, Inc.*, 36 F. Supp. 3d 217, 226-27 (D. Mass. 2014)("While neither the TCPA nor FCC regulations provide a definition for willful and knowing, most courts have interpreted the willful or knowing standard to require only that a party's actions were intentional, not that it was aware that it was violating the statute. Those courts relied, in part, on the fact that 'the Communications Act of 1943, of which the TCPA is a part, defines willful as 'the conscious or deliberate commission or omission of such act, irrespective of any intent to violate

any provision[], rule or regulation.' And '[t]he plain language of 47 U.S.C. § 227(b) makes the sender of an unauthorized [communication] strictly liable, so interpreting 'willfully' as requiring a volitional act does not render the treble damages provision redundant with simple [liability] under the TCPA.' The Court finds that reasoning persuasive and will therefore apply that standard here.")(internal citations omitted); *Roylance v. ALG Real Estate Servs., Inc.*, 2015 WL 1522244, at *10 (N.D. Cal. Mar. 16, 2015), *report and recommendation adopted as modified,* 2015 WL 1544229 (N.D. Cal. Apr. 3, 2015)("The case law supports Roylance's position that a person need not have intent to commit an unlawful act in order to act willfully or knowingly under the TPCA.").

This definition of the term "willful" has support in other areas of the law as well. *See Smith v. Wade*, 461 U.S. 30, fn8 (1983)("Finally, 'willfulness' did not mean intent to cause injury, but only voluntary action: 'Wilful . . . generally, as used in courts of law, implies nothing blamable, but merely that the person of whose action or default the expression is used is a free agent, and that what has been done arises from the spontaneous action of his will. It amounts to nothing more

than this: that he knows what he is doing, and intends to do what he is doing, and is a free agent. And wilfully does not imply that an act done in that spirit was necessarily a malicious act . . . .'")(quoting 30 American and English Encyclopedia of Law 529-535 (2d ed. 1905))(ellipses in original); *Shyda v. Dir., Bureau of Alcohol, Tobacco & Firearms, U. S. Dept. of Treasury*, 448 F. Supp. 409, 415 (M.D. Pa. 1977)(Nealon, J.)("In a civil context such as this, the definition of 'willfully' is dependent upon the specific statutes involved. . . . There is no requirement of bad purpose as might be imposed were the Court faced with determining the definition of willfulness in a criminal prosecution.").

Although the Third Circuit has not discussed willfulness in the context of the TCPA, it has adopted a similarly liberal standard where the term is used in other consumer protection statutes. *See e.g., Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 320 (3d Cir. 2003)(quoting *Landsdale Family Restaurants, Inc. v. Weis Food Service*, 977 F.2d 826, 829 (3d Cir. 1992)("It is a willful violation of the automatic stay when a creditor violates the stay with knowledge that the bankruptcy petition has been filed. Willfulness does

not require that the creditor intend to violate the automatic stay provision, rather it requires that the acts which violate the stay be intentional.")).

Thus, as there is no doubt that Defendant intended to *call* Plaintiff's cell phone number, it appears clear that it acted willfully under the more common definition.

However, not every court has applied this same standard of willfulness with respect to violations of the TCPA. Some courts instead apply a higher standard, essentially requiring the caller to have reason to know that the conduct would violate the TCPA. For example, in *Harris v. World Fin. Network Nat. Bank*, 867 F. Supp. 2d 888, 898 (E.D. Mich. 2012), calls were being made to a number that had originally belonged to a debtor, but which had been reassigned to an unrelated third-party. At some point after the phone calls began, the consumer informed the collector that it was not reaching the correct individual. But, unbeknownst to the consumer, the collector was calling the same phone number for multiple accounts. Thus, although the collector removed the phone number from one account, it did not remove the

phone number from *every* account. As a result, the collector

inadvertently continued to call the consumer's cell phone.

At summary judgment, the consumer asked for treble damages for

all of the phone calls that were placed to his cell phone. However, the

court denied this request, and refused to award treble damages for all of

the calls because before the consumer notified the collector, the collector

could not have known about the reassignment. *Id.* at 895.  However, the

court *did* award treble damages for all calls made after notice was

provided to the collector that it was calling a wrong number, finding

that the collector's conduct "displayed a reckless disregard for Plaintiff's

rights under the TCPA . . . ." *Id.* at 897; *see also Lary v. Trinity*

*Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1107 (11th Cir. 2015)(citing

*Harris* while holding that the "requirement of 'willful[ ] or knowing[ ]'

conduct requires the violator to know he was performing the conduct

that violates the statute.")(brackets in original).

Plaintiff believes that the Court should apply the more common

definition of willful, which merely requires that the illegal conduct be

intentional. But, here, it does not matter what standard the Court

chooses to apply because of the egregious nature of Defendant's

violations. As discussed *supra*, Plaintiff repeatedly informed Defendant that he did not want to receive any further phone calls. He did so in a clear and polite manner, and Defendant even recorded the conversations. Nevertheless, Defendant blatantly ignored these requests. Instead, it placed 233 phone calls to Plaintiff's cell phone using an automatic telephone dialing system.

This case is far more egregious than *Harris* where the collector inadvertently continued to place calls after it had removed the consumer's phone number from one account. Instead, rather than an inadvertent or "reckless" violation, Defendant here blatantly and intentionally violated the TCPA. Treble damages are necessary here to ensure that the protections afforded by the statute are enforced. Allowing a defendant to escape treble damages for such egregious conduct would significantly lessen the deterrent effect that treble damages are meant to provide, as there would no longer be a difference between the penalty for an inadvertent violation of the TCPA as compared to an intentional violation. Thus, the Court should exercise its discretion and award treble damages for each of the 233 violations of the TCPA.

## CONCLUSION

There is no dispute regarding most of the required elements that Plaintiff needs to prove in order to prevail on his case. Plaintiff received 233 autodialed phone calls on his cell phone after he informed Defendant that he did not want to receive any further phone calls—and he thereafter made two additional requests that Defendant stop calling him.

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

Redacted Pending Motion to Seal Redacted Pending Motion to Seal

The second legal issue is what impact, if any, the TCPA Amendment should have on this case. As discussed above, the amendment should have no effect because the FCC's regulations have not yet been implemented. And, as the FCC has made clear, applying the statute without the implementing regulations would hinder the consumer protective purpose of the TCPA. Additionally, the TCPA Amendment should not apply retroactively because it would have a negative impact on the rights of the parties. Further, a commonsense analysis dictates that *this* Defendant should not be excused from liability because of the fortuitous timing of its illegal conduct—as there can be no doubt that its conduct would be impermissible once the Implementing Regulations become effective.

Finally, treble damages are appropriate because Defendant willfully violated the TCPA under *any* standard for willfulness. While the more common standard only requires that the conduct itself—not the violation—be intentional, here Plaintiff could prevail even if he were required to demonstrate that Defendant intentionally violated the

46

statute. Because Plaintiff clearly and unambiguously told Defendant to stop calling him three separate times, there is no way that a reasonable jury could hold that the violations were anything other than intentional. As a result, Plaintiff should be awarded treble damages for each of the 233 phone calls.

Thus, because there are no questions of material fact, and Plaintiff is entitled to judgment as a matter of law, Plaintiff respectfully requests that the Court grant his motion for summary judgment and award him with $1,500 for each of Defendant's 233 violations of the TCPA, plus the costs incurred in pursuing this action.

<div align="right">

*s/ Brett Freeman*
Brett Freeman
Bar Number PA 308834
SABATINI LAW FIRM, LLC
Attorney for Plaintiff
216 N. Blakely St.
Dunmore, PA 18512
Phone (570) 341-9000
Facsimile (570) 504-2769
Email: bfecf@sabatinilawfirm.com

</div>

## CERTIFICATE OF SERVICE

Service is being effectuated via the CM/ECF system.

<div align="right">

*s/ Brett Freeman*
Brett Freeman

</div>

## CERTIFICATION OF WORD COUNT

The foregoing brief contains 9,942 words, which is in compliance

with the Court's October 25, 2016 Order (Doc. 14).

<div align="center" style="margin-left:40%;">

*s/ Brett Freeman*
Brett Freeman

</div>